**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

RAUL VARGAS VALENCIA,

        Movant,

  v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 2:18-cv-80

(Case No.: 2:16-cr-26)

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Raul Valencia ("Valencia"), who is currently housed at the Federal Correctional Institution-Allenwood Low in White Deer, Pennsylvania, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.  Doc. 1.  The Government filed a Response, and Valencia filed a Reply.  Docs. 3, 6.  Valencia filed a Motion to Supplement and a Notice of Supplemental Authority, docs. 9, 11, to which the Government filed Responses, docs. 10, 12. For the reasons which follow, I **RECOMMEND** the Court **DENY** Valencia's § 2255 Motion, **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case, and **DENY** Valencia *in forma pauperis* status on appeal and a Certificate of Appealability. I **DENY** Valencia's Motion to Supplement and his request for an evidentiary hearing.  Docs. 9, 11.

### BACKGROUND

Valencia was indicted and charged with: possession of 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (counts 1 and 4); possession of 5 grams or more of methamphetamine with intent to distribute, in violation of

21 U.S.C. § 841(a)(1) (counts 2 and 3); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  United States v. Valencia, 2:16-cr-26 ("Crim. Case"), Doc. 1.  Valencia's appointed attorney, Ronald Harrison, II, filed numerous pre-trial motions on his behalf.  Crim. Case, Docs. 17–34.  After the pretrial motions were filed, the Government and Valencia reached a plea agreement.  Crim. Case, Docs. 51, 52.  By that agreement, Valencia agreed to plead guilty to a lesser included offense on count 4, possession of a quantity of methamphetamine with intent to distribute, for which he faced a sentence of not more than 20 years' imprisonment.  Crim. Case, Doc. 52 at 1–2.  In return, the Government agreed to: not object to a three-level reduction for acceptance of responsibility, if recommended; not file a 21 U.S.C. § 851 notice of enhancement, if applicable; file a U.S.S.G. § 5K1.1 or Rule 35 motion for sentencing reduction, if applicable, as outlined in the plea agreement; and move to dismiss any remaining counts in the indictment.  Id. at 2.  The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing, during which Georgia Bureau of Investigation Special Agent Kyle McNeal provided the factual basis for the plea.[1]  Specifically, Agent McNeal stated Jeff Davis County Investigator Dwayne Kirby gave him information that Valencia was a "source of supply in crystallized meth[amphetamine]."  Crim Case, Doc. 74 at 20–21.  Agent McNeal stated law enforcement officials arranged for a confidential informant to make a number of controlled buys of crystal methamphetamine from Valencia on several occasions.  Id. at 21–22.  In addition, Agent McNeal stated agents conducted a "buy-bust" from Valencia on December 14, 2015, and then executed search warrants, yielding a seizure of approximately a kilogram of

---

[1]     Although Valencia is not fluent in English, he had the assistance of an interpreter during this hearing and affirmed to the Court he had been able to communicate with Mr. Harrison with the help of an interpreter.  Crim. Case, Doc. 74 at 6.  Moreover, Valencia does not suggest in any of his filings that language issues interfered with his ability to understand the proceedings or to make knowing, intelligent, and voluntary decisions about his case.

methamphetamine, drug paraphernalia, a small quantity of marijuana, over $13,000 in cash, and a firearm.  Id. at 22.  Valencia agreed with Agent McNeal's testimony and admitted to the truth of it.  Id. at 23.  Judge Wood accepted Valencia's guilty plea and adjudged him guilty of the lesser included offense of count 4 in the indictment.  Id. at 23–24.  Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Id. at 24.

In the PSR, the probation officer recounted items recovered during the execution of a search warrant of Valencia's residence after his arrest, including small quantities of methamphetamine and marijuana in two pieces of furniture in the master bedroom and a Jimenez Arms, Model J.A. 25, .25 caliber pistol and two metal ammunition magazines in a nightstand drawer, also in the master bedroom.  PSR, ¶ 12.  The probation officer computed Valencia's offense level to be 38, which was comprised of a base offense level of 34 for his possession with intent to distribute an equivalent of more than 10,000 but less than 30,000 kilograms of marijuana,[2] plus two two-point enhancements for possession of a firearm during the offense and maintaining a premises for manufacturing or distributing a controlled substance ("stash house").[3] Id. at ¶¶ 22–24.  The probation officer further adjusted Valencia's offense level downwardly by three points for his acceptance of responsibility and for assisting law enforcement, for a total offense level of 35.  Id. at ¶¶ 30–32. Valencia had zero criminal history points, which placed him in criminal history category I.  Id. at ¶ 36.  Valencia's advisory Guidelines' range was 168 to 210 months' imprisonment; his statutory maximum term was 20 years' imprisonment.  Id. at ¶¶ 54,

---

[2]     The probation officer noted, when a case involves "differing controlled substances, each drug is to be converted to its mari[j]uana equivalency to obtain a single offense level[]" under § 2D1.1(c)(3), Application Note 8(B).  PSR, ¶¶ 15, 16, 22.

[3]     The "stash house" location was identified as being two mobile homes, purportedly owned by Felipe Aguilar, located at 16 Amy Road in Hazlehurst, Georgia.  PSR, ¶ 13.  Valencia's residence was identified as being in Hazlehurst on McDaniels Road.  Id. at ¶ 6.

55.  The probation officer noted Valencia's substantial assistance to authorities could warrant departure based on a § 5K1.1 motion being made on his behalf, id. at ¶ 69, though such a motion was not filed.

At the sentencing hearing, the parties announced an agreement that the Government would not seek a stash house enhancement, and, in exchange, Valencia would withdraw his objection to certain drug amounts, the presence of the firearm, and the § 2D1.1 enhancement. Crim. Case, Doc. 75 at 5–6.  Judge Wood adopted the factual statements in the PSR as her findings of fact and the probation officer's application of the advisory Guidelines, after accounting for the removal of the two-point stash house enhancement, as her legal conclusions. Id.  Judge Wood noted the parties' agreement was consistent with the unobjected to portions of the PSR.  Id. at 6.  Judge Wood found Valencia's total offense level was 33 with a criminal history category of I, resulting in an advisory Guidelines' range of 135 to 168 months' imprisonment.  Id.  Judge Wood noted there was no statutory minimum sentence but a maximum statutory sentence of 20 years in prison.  Id. at 7.  Judge Wood ultimately sentenced Valencia to 135 months' imprisonment and directed Valencia be delivered to an Immigration and Customs Enforcement officer for deportation proceedings after completion of his federal sentence.  Crim. Case, Doc. 63 at 2.

Mr. Harrison filed a post-conviction consultation certificate stating he fully explained the appellate process with Valencia, advised Valencia of the advantages and disadvantages of filing an appeal, and asked Valencia about whether he wanted to file an appeal.  Crim. Case, Doc. 62. In light of this discussion, Valencia decided not to file an appeal; Valencia and Mr. Harrison both signed this certificate.  Id.  Valencia did not file a direct appeal, only a motion to order transcripts.  Crim. Case, Doc. 69.

Valencia has now filed his § 2255 Motion to challenge his sentence.  Doc. 1.  This Motion is ripe and ready for review.

## DISCUSSION

### I.    Whether Counsel Rendered Ineffective Assistance

Valencia alleges his counsel was ineffective because he did not file a notice of appeal regarding the U.S.S.G. § 2D1.1 firearm enhancement, nor did he file a sentencing memorandum or otherwise object to this enhancement.  Doc. 1 at 1.  Relatedly, Valencia contends he was not able to receive benefit from § 5C1.2 (safety valve reduction) because counsel did not object to the § 2D1.1 enhancement.  Id. at 3.  According to Valencia, but for ineffective assistance of counsel, his offense level would have been two points lower, resulting in a lower sentencing range.  Id. at 2.  Valencia avers there was no nexus between the firearm found and the underlying offense.  Id.

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001), and on appeal, Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption

counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong."  Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance."  Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.  "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."

James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U .S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

A.      **Assistance During Sentencing**

Valencia raises two grounds of ineffective assistance of counsel related to his counsel's assistance during sentencing. First, Valencia avers Mr. Harrison rendered ineffective assistance by failing to object to the § 2D1.1 firearm enhancement because there was no evidence of a nexus between the firearm found and the underlying offense. Doc. 1 at 2. Valencia states his offense level would have been two points lower than it was, and, but for this ineffective assistance, he would have faced "a sentencing guideline range much lower than" he did. Id. Second, Valencia contends he was not afforded the opportunity for a sentence reduction under § 5C1.2 because Mr. Harrison did not object to the § 2D1.1 enhancement. Id.

The Government contends Valencia agreed to the accuracy of the factual basis of his plea agreement, which includes the statement, "The firearm was possessed in furtherance of the drug

trafficking, as a tool of the drug trade." Doc. 3 at 22.  Further, the Government asserts the law supports this Court's finding the firearm was possessed in furtherance of a drug crime.  The Jimenez Arms .25 caliber pistol and two metal ammunition magazines were found in the same room as methamphetamine and marijuana.  Id.  The Government notes Mr. Harrison did object to the § 2D1.1 firearm enhancement prior to the sentencing hearing, but Mr. Harrison announced during sentencing he was withdrawing that objection based on an agreement the stash house enhancement was also being withdrawn.  Id. at 23.  Additionally, the Government states Valencia did not qualify for the § 5C1.2 safety valve reduction because he possessed a firearm and his offense had no statutory mandatory minimum.  Id. at 24.  The Government also notes Valencia cannot show deficient performance or prejudice.  Id.

During the sentencing hearing proceedings, Mr. Harrison and Judge Wood noted Mr. Harrison had four objections to the PSR: the two-point enhancement based on the existence of a "stash house," the amount of drugs attributed to the stash house, the two-point enhancement for the firearm found in the bedside table in the master bedroom of Valencia's residence, and "the math."  Crim. Case, Doc. 75 at 4–5.  Judge Wood verified with Mr. Harrison his negotiations with the Government resulted in the Government agreeing not to pursue the two-level enhancement for the stash house and, in exchange, Mr. Harrison withdrew his objections to the stash house drug amounts and the § 2D1.1 firearm enhancement.  Id. at 5.  When Judge Wood asked Valencia if this was the agreement he wished to reach, he said it was.[4]  Id. at 6.  Judge Wood adopted the factual statements in the PSR as her findings of fact and the probation officer's application of the advisory Guidelines, after accounting for the removal of the two-point stash house enhancement, as her legal conclusions.  Id.  Judge Wood found Valencia's total

---

[4]     Valencia had the assistance of an interpreter at his sentencing hearing.  Crim. Case, Doc. 75.

offense level was 33 with a criminal history category of I, resulting in an advisory Guidelines' range of 135 to 168 months' imprisonment.  Id.  Judge Wood noted there was no statutory minimum sentence but a maximum statutory sentence of 20 years in prison.  Id. at 7.  After consideration of what occurred at the sentencing hearing, the PSR, and the factors set forth in 18 U.S.C. § 3553, Judge Wood sentenced Valencia to 135 months' imprisonment.  Id. at 12.  Judge Wood stated she found the bottom end of the advisory Guidelines' range to be appropriate "to punish the pretty brazen nature" of Valencia's conduct.[5]  Id.

Mr. Harrison offered argument for a downward variance of sentence.  He stated the advisory Guidelines' range was too severe.  Id.  Mr. Harrison provided the Court with background information, including how Valencia came to America, developed a relationship with his wife and her children, raising them as his own, and has a blood disorder.  Id. at 7–8.  Mr. Harrison stressed Valencia had no criminal history or history of violence, the evidence suggested he was a "midlevel dealer at best[,]" he was the main support system for his family, and he threatened no one with a firearm.  Id. at 8.  Mr. Harrison also noted Valencia had been in state custody for 10 months before the federal case, time for which he may or may not have credited, and faces deportation.  Id. at 9.  The Government asked the Court to impose a Guidelines' sentence due to the severity of Valencia's actions.  Id. at 10–11.

### 1.   The firearm enhancement under § 2D1.1.

The evidence of record during the sentencing proceedings clearly establishes Mr. Harrison argued on Valencia's behalf for a sentence below the advisory Guidelines' range.

---

[5]     Even if Valencia had been entitled to a two-level decrease without the § 2D1.1 firearm enhancement, he would have had an offense level of 31 and criminal history category of I.  The Guidelines' range would have been 108 to 135 months' imprisonment.  Sent. Table (2016).  Valencia has not shown Judge Wood would have not imposed a 135-month sentence against him in this situation, particularly in light of her statement relating to the "pretty brazen nature" of Valencia's conduct.  Such a sentence would still have been within the Guidelines' range, as found by Judge Wood.

Though Mr. Harrison was not successful in having the Court depart from the advisory

Guidelines' range, he was able to reach an agreement with the Government prior to sentencing

which lowered Valencia's total offense level, resulting in a sentencing range of 135 to 168

months' imprisonment rather than the 168 to 210 months' advisory range he originally faced.  In

addition, Valencia affirmed the agreement was one he wished to reach, too.  Importantly,

Valencia's argument there was no nexus between the firearm found and the underlying offense is

meritless.  Valencia agreed to the accuracy of the factual basis of his plea agreement, which

includes the statement, "The firearm was possessed in furtherance of the drug trafficking, as a

tool of the drug trade."  Crim. Case, Doc. 52 at 6, 12; Crim. Case, Doc. 74 at 22, 23.  Further, the

firearm was possessed in furtherance of a drug offense, as the Jimenez Arms .25 caliber pistol

and two metal ammunition magazines were found in the same room as methamphetamine and

marijuana—the master bedroom of Valencia's residence.  PSR, ¶ 12.

For the § 2D1.1(b) enhancement to apply, "the government must show by a

preponderance of the evidence that a weapon was present during the offense of conviction or

during related relevant conduct."  United States v. Holmes, No. 20-13718, 2021 WL 2155416, at

*2 (11th Cir. May 27, 2021) (citing United States v. Smith, 127 F.3d 1388, 1390 (11th Cir.

1997)).  "Relevant conduct includes acts that were part of the 'same course of conduct or

common scheme or plan as the offense of conviction.'"  Id. (quoting United States v. Stallings,

463 F.3d 1218, 1220 (11th Cir. 2006)).  "Evidence of 'proximity between guns and drugs,

without more, is sufficient to meet the government's burden.'"  Id. (quoting United States v.

Carillo-Ayala, 713 F.3d 82, 91–92 (11th Cir. 2013)).  "If the government meets this initial

burden, then the burden shifts to the defendant to make a difficult showing that the connection

between the firearm and the charged offense was 'clearly improbable.'"  Id. (quoting United States v. George, 872 F.3d 1197, 1204 (11th Cir. 2017)).

As noted above, Valencia agreed to the accuracy of the factual basis of his plea agreement, which includes the statement, "The firearm was possessed in furtherance of the drug trafficking, as a tool of the drug trade."  Crim. Case, Doc. 52 at 6, 12; Crim. Case, Doc. 74 at 22, 23.  Further, the firearm was possessed in furtherance of a drug offense, as the Jimenez Arms .25 caliber pistol and two metal ammunition magazines were found in the same room as methamphetamine and marijuana—the master bedroom of Valencia's residence.  PSR, ¶ 12.  The Government met its burden by showing proximity between the firearm and the drugs.  However, Valencia fails to meet his shifted burden of showing this connection is improbable—clearly or otherwise.

Valencia's citation to Mack v. United States, 782 F. App'x 789 (11th Cir. 2019), as support for his § 2D1.1 enhancement argument is misplaced.  Doc. 11.  Mack argued in his underlying § 2255 motion his counsel was ineffective for failing to object to the § 2D1.1(b) firearms enhancement because "the grounds for the enhancement were 'glaringly tenuous' because the guns were found well after the conspiracy ended and in a place with no apparent connection to his drug-trafficking activities."  Mack, 782 F. App'x at 790.  Mack also contended, if counsel had investigated the matter, he would have learned the guns belonged to Mack's wife and daughter.  Id.  The Eleventh Circuit Court of Appeals determined Mack was entitled to an evidentiary hearing because he alleged facts which, if true, would show his counsel performed deficiently by failing to object to the § 2D1.1(b) enhancement.  Id. at 792.  The court noted there was no evidence of record to conclude firearms were "'present at the site of the charged conduct[,]'" as the allegations contained in the indictment were the drug-trafficking conspiracy

involved warehouses, not Mack's home, and the conspiracy ended in 2013, well before Mack's arrest. Id. at 792–93 (quoting Stallings, 463 F.3d at 1220).

The Mack decision is clearly distinguishable from the facts and evidence underlying Valencia's prosecution. Valencia was arrested on December 14, 2015, and a search warrant was executed that same day. PSR, ¶ 12. The charged offense conduct occurred on December 14, 2015, or close in time to December 14, 2015, and in Valencia's residence, including his bedroom. Id. at ¶¶ 1, 2, 10, 12; see also, Crim. Case, Doc. 1. And, because it cannot be stressed enough, Valencia agreed to the accuracy of the factual basis of his plea agreement, which includes the statement, "The firearm was possessed in furtherance of the drug trafficking, as a tool of the drug trade." Crim. Case, Doc. 52 at 6, 12; Crim. Case, Doc. 74 at 22, 23. Further, the firearm was possessed in furtherance of a drug offense, as the Jimenez Arms .25 caliber pistol and two metal ammunition magazines were found in the same room as methamphetamine and marijuana—the master bedroom of Valencia's residence. PSR, ¶ 12.

In sum, Valencia cannot show deficient performance on Mr. Harrison's behalf based on any alleged failure to maintain an objection to the § 2D1.1(b) enhancement, nor can Valencia establish he was prejudiced by any such performance. Thus, Valencia is not entitled to relief on this ground, and the Court should **DENY** this portion of Valencia's Motion.

### 2. *The applicability of § 5C1.2.*

In addition, Valencia cannot show Mr. Harrison was ineffective by failing to object to § 5C1.2's inapplicability to Valencia's offense level. Section 5C1.2 of the Sentencing Guidelines, or the safety valve provision, applies to offenders who do not face a statutory mandatory minimum sentence and who meet all five circumstances of 18 U.S.C. § 3553(f)(1)–

(5).[6]  Valencia pleaded guilty to a lesser included offense of count 4 of the indictment, and that

statutory provision carries a penalty of not more than 20 years in prison but no mandatory

minimum.  In addition, Valencia was found to be in possession of a firearm during the charged

offense; thus, he cannot meet either criteria of § 5C1.2's safety valve.  § 5C1.2(a) (noting a

statutory minimum provision for convictions under § 841 necessary), (a)(2) (noting defendant

did not possess a firearm in connection with the offense); § 3553(f)(2) (same).  Valencia cannot

show he qualified for application of § 5C1.2(a)'s safety valve.  Consequently, Mr. Harrison

---

[6]      Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846), . . . the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

    (1) the defendant does not have—
        (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
        (B) a prior 3-point offense, as determined under the sentencing guidelines; and
        (C) a prior 2-point violent offense, as determined under the sentencing guidelines;

    (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

    (3) the offense did not result in death or serious bodily injury to any person;

    (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

    (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(1)–(5).

could not have rendered ineffective assistance by failing to argue this provision should have applied to Valencia.  Valencia meets neither prong of the <u>Strickland</u> standard, and the Court should **DENY** this portion of his § 2255 Motion.

### B.    Claims Related to Appeal

Valencia contends his sentence violates his constitutional rights due to Mr. Harrison's failure to file a notice of appeal relating to the § 2D1.1 firearm enhancement.  Doc. 1 at 1. Valencia also contends the enhancement caused him prejudice because the Court used the enhancement as a starting point for his sentencing range.  <u>Id.</u>

The Government responds defense counsel did not file an appeal because Valencia freely and voluntarily waived his right to appeal in his plea agreement.  Doc. 3 at 18.  The Government points out, in the plea agreement, Valencia expressly instructed Mr. Harrison not to file an appeal on Valencia's behalf.  <u>Id.</u>  Moreover, the Government notes Valencia did not express a desire to appeal after sentencing and he signed a post-conviction certification indicating he did not wish to file an appeal.  <u>Id.</u>

It is well-settled waiver of appeal[7] provisions in plea agreements are enforceable if the waivers are knowing and voluntary.  <u>United States v. Johnson</u>, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing <u>United States v. Weaver</u>, 275 F.3d 1320, 1333 (11th Cir. 2001)); <u>Williams v. United States</u>, 396 F.3d 1340, 1341 (11th Cir. 2005).  To establish the waiver was made knowingly and voluntarily, the government must show either (1) "the district court specifically questioned the defendant" about the waiver during the plea colloquy, or (2) the record makes clear that "the defendant otherwise understood the full significance of the waiver."  <u>United States</u>

---

[7]    "Appeal" refers to the right to appeal or contest, directly or collaterally, a sentence.  <u>United States v. Bushert</u>, 997 F.2d 1343, 1350 & n.17 (11th Cir. 1993).  Case law concerning waiver of a direct appeal has also been applied to waiver of the right to collateral proceedings.  <u>Vaca-Ortiz v. United States</u>, 320 F. Supp. 2d 1362, 1365–67 (N.D. Ga. 2004).

v. Salgado, 799 F. App'x 806, 807 (11th Cir. 2020); Johnson, 541 F.3d at 1066; see also Medina v. United States, 597 F. App'x 583, 586 (11th Cir. 2015) (same).  The district court must clearly convey to the defendant the circumstances under which he is giving up the right to appeal. Salgado, 799 F. App'x at 807 (internal citation omitted).  "An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error."  United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005).  "Waiver would be nearly meaningless if it included only those appeals that border on the frivolous."  Brown v. United States, 256 F. App'x 258, 261–62 (11th Cir. 2007).

However, the Eleventh Circuit has "noted that '[i]n extreme circumstances—for instance, if the district court had sentenced [the defendant] to a public flogging—due process may require that an appeal be heard despite a previous waiver.'"  Salgado, 799 F. App'x at 807 (quoting United States v. Howle, 166 F.3d 1166, 1169 n.5 (11th Cir. 1999)).  Nonetheless, the Eleventh Circuit has "'consistently enforced knowing and voluntary appeal waivers according to their terms.'"  Id. (quoting United States v. Bascomb, 451 F.3d 1292, 1294 (11th Cir. 2006)).  A court is to "apply 'a strong presumption that [a defendant's] statements made during the [plea] colloquy are true.'"  Id. (quoting United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994)).

The pertinent provision of Valencia's plea agreement states:

> Defendant entirely waives his right to a direct appeal of his conviction and sentence on any ground.  The only exceptions are that the Defendant may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum[;] (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence.  Absent those exceptions, Defendant explicitly and irrevocably instructs his attorney not to file an appeal.

Crim. Case, Doc. 52 at 8.  The record clearly indicates Valencia understood the implications of

entering a guilty plea.  As part of the colloquy Judge Wood had with Valencia during his Rule 11

hearing, Judge Wood and Valencia had the following exchange, after Valencia was under oath:[8]

> THE COURT: I do want to pick back up on something that Mr. Gilluly
> mentioned, and that is pursuant to this plea agreement that you're presenting, you
> do waive certain appellate rights.
>
> It states, "Defendant entirely waives his right to a direct appeal of his conviction
> and sentence on any ground."  Now, there are three exceptions to that waiver.
> That means if but only if one of these three things were to occur you would get an
> appeal right: Number 1, if I were to sentence you above the statutory maximum,
> you could appeal that directly.  Number 2, if I were to sentence you above the
> advisory guideline range as found by me, you could appeal that directly; or
> Number 3, if the Government were to file a direct appeal then you, too, could file
> one.  Otherwise, by virtue of this plea agreement, you waive all other direct
> appellate rights; understand?
>
> THE DEFENDANT: Yes.

Crim. Case, Doc. 74 at 16–17.  Judge Wood reminded Valencia of his appeal waiver during

sentencing proceedings.  Crim. Case, Doc. 75 at 14.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong

presumption that the statements made during the colloquy are true" and his plea is knowing and

voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).

Valencia's Rule 11 colloquy with the Court and his plea agreement make clear Valencia

understood the full significance of the appeal waiver.  As Valencia stated during his Rule 11

colloquy, Mr. Harrison reviewed the indictment and plea agreement and spoke in general terms

about the Sentencing Guidelines with Valencia.  Crim. Case, Doc. 74 at 8–9.  Thus, the appeal

and collateral attack waiver is enforceable.  See Williams, 396 F.3d at 1342 & n.2; see also

White, 307 F.3d at 343.

---

[8]     Judge Wood verified Valencia had an interpreter translate the plea agreement before he signed it.
Crim. Case, Doc. 74 at 16.

Valencia was not sentenced to a term of imprisonment higher than the advisory Guidelines' range Judge Wood found to be appropriate, nor was he sentenced above the statutory maximum sentence.  Valencia's sentence of 135 months' imprisonment fell within the 135- to 168-month Guidelines range, as found by Judge Wood, and well below the statutory maximum sentence of 20 years' imprisonment Valencia could have faced.  See 21 U.S.C. § 841(b)(1)(C).  The Government did not file an appeal.  Thus, it appears Valencia's claim regarding Mr. Harrison's alleged ineffective assistance by not filing an appeal falls squarely within the appeal waiver.

The Court turns to whether Valencia sets forth a valid ineffective assistance of counsel claim against Mr. Harrison for failing to file a notice of appeal on Valencia's behalf at Valencia's directive, even though Valencia does not make this argument in his original Motion.  Doc. 1.[9]  "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's] failure to prove either will be fatal to his claim."  Johnson v. Scott, 68 F.3d 106, 109 (5th Cir. 1995).  Under the Strickland test, the petitioner must initially show counsel's representation fell below an "objective standard of reasonableness."  Strickland, 466 U.S. at 688. "While it need not be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys representing criminal defendants.'"  Jones v. White, 992 F.2d 1548, 1557 (11th Cir. 1993) (quoting Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir 1991)).  In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690.  The effectiveness or ineffectiveness of counsel must be

---

[9]    Valencia does base his Motion to Supplement on the ground he instructed Mr. Harrison to file a notice of appeal on his behalf.  Doc. 9 at 1.  The Court addresses this contention under Valencia's ineffective assistance claims and as a separate Motion.

evaluated by consideration of the totality of the circumstances.  Stanley v. Zant, 697 F.2d 955, 962 (11th Cir.1983).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice.  Strickland, 466 U.S. at 691–92.  In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different."  Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994).  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.  Strickland, 466 U .S. at 694.

"Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  "Even assuming that a rational defendant would not have wanted to appeal the case, [where a defendant] expressly communicated to his attorney his desire to appeal . . .[,] Flores-Ortega mandates that the attorney conduct a specific type of consultation, informing his client about the advantages and disadvantages of appealing and making a reasonable effort to determine the client's wishes." Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

It is well-settled an attorney's failure to file a requested notice of appeal is *per se* ineffective assistance of counsel.  Flores-Ortega, 528 U.S. at 470, 483–86; Gaston, 237 F. App'x at 495.  A defendant claiming ineffective assistance on that score need not demonstrate an ability to raise meritorious issues on appeal.  Flores-Ortega, 528 U.S. at 477–78.  Instead, he can prove ineffective assistance by showing a "reasonable probability" he would have timely appealed had

counsel not failed to file an appeal on his behalf.  Id. at 484.  Further, even where a defendant has signed a waiver of direct appeal as part of his plea agreement (as Valencia did in this case), he has no burden to show the issue he would have raised on appeal falls outside of that waiver.  Gaston, 237 F. App'x at 497; Gomez-Diaz, 433 F.3d at 793.

The post-conviction consultation certificate, which Valencia signed on November 27, 2017, reflects Valencia advised Mr. Harrison he did not want to file an appeal.  Crim. Case, Doc. 62.  Through that notice, Mr. Harrison certified—and Valencia agreed—Mr. Harrison met with Valencia, explained to Valencia the appellate process and his rights to appeal his conviction and sentence, advised Valencia of the advantages and disadvantages of filing an appeal, and thoroughly inquired of him about his interest in appealing.  Id.  After this consultation, Valencia certified his agreement with these statements by printing and signing his name.  Id.  Valencia has not denied any of the contents of this notice or otherwise contested the validity of this notice in any of his pleadings.  In addition, Valencia does not assert there is a reasonable probability he would have filed a timely notice of appeal or Mr. Harrison failed to have a "specific type of consultation" with him regarding an appeal.  Gomez-Diaz, 433 F.3d at 792.

The notice shows Mr. Harrison fully explained the appellate process to Valencia, apprised Valencia of the advantages and disadvantages of an appeal, fully informed him of the consequences of that decision (including in a § 2255 proceedings like this), and attempted diligently to ascertain his wishes.  It also shows Valencia expressly instructed Mr. Harrison not to file an appeal.  Cf. Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea . . . .  [Consequently,] the representations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings." (quoting Blackledge v. Allison, 431 U.S. 63,

19

71–74 (1977))); Rosin v. United States, 786 F.3d 873, 878 (11th Cir. 2015) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence.").  In short, the undisputed post-conviction consultation certification establishes Valencia's informed decision not to take an appeal and thwarts any claim Valencia may have made counsel was ineffective for failing to file an appeal.  See Eubank v. United States, No. CR414-005, 2016 WL 750344, at *1 (S.D. Ga. Feb. 25, 2016), *report and recommendation adopted*, 2016 WL 1464578 (S.D. Ga. Apr. 13, 2016), *certificate of appealability denied*, No. 16-11933-F, 2016 WL 6246827 (11th Cir. Oct. 25, 2016) (Section 2255 motion denied where movant faulted her lawyer for failing to directly appeal but notice of post-conviction consultation certification memorialized her informed decision not to take an appeal); Eason v. United States, No. CR613-007, 2014 WL 4384652, at *3 (S.D. Ga. Sept. 3, 2014), *report and recommendation adopted*, 2014 WL 4956680 (S.D. Ga. Oct. 2, 2014) (same); see also Price v. United States, No. CR614-016, 2017 WL 525869, at *4 (S.D. Ga. Feb. 8, 2017), *report and recommendation adopted*, 2017 WL 1393058 (S.D. Ga. Apr. 11, 2017) (notice of post-conviction consultation certification and attorney's affidavit regarding same rebut § 2255 claim counsel neglected to apprise movant of the advantages and disadvantages of filing direct appeal).

For all of these reasons, the Court should **DENY** Valencia's claim Mr. Harrison rendered ineffective assistance by failing to file an appeal on his behalf.  Thus, the Court should **DENY** this portion of Valencia's Motion.

Valencia has shown no reason to vacate, set aside, or correct his sentence or conviction. The Court should **DENY** his Motion in its entirety.

## II.    Motion to Supplement

Valencia contends he asked his attorney to file an appeal on his behalf regarding the firearm enhancement and later learned Mr. Harrison did not do so.  Doc. 9 at 1.  Valencia attached a declaration in support of his Motion, stating he was sentenced on November 27, 2017, and told Mr. Harrison to file an appeal after sentencing but did not hear back from Mr. Harrison. Doc. 9-1 at 2.

In response, the Government contends the record belies Valencia's claim.  Doc. 10 at 1. The Government asserts Valencia's claim, which he asserted 10 months after his original Motion was filed, runs afoul of Federal Rule of Civil Procedure 15 because it does not relate back to his original claims and the time limits of 28 U.S.C. § 2255(f).  Id. at 2.  Even if Valencia's claim relates back, the Government posits it is a self-serving claim that is contradicted by the record. Id. at 2–3.

Rule 15(a) permits a party to amend a pleading once "as a matter of course" within 21 days after serving it or after service of a responsive pleading.  Fed. R. Civ. P. 15(a).  Otherwise, a party may amend a pleading "only with the opposing party's written consent or the court's leave."  Id.  Rule 15(c) allows an amended pleading to relate back to the date of the original pleading if, in relevant part, it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "In the habeas context, it is not enough for the later pleading to concern the same legal proceeding as the original motion."  Wilcher v. United States, 808 F. App'x 938, 940–41 (11th Cir. 2020) (citing Mayle v. Felix, 545 U.S. 644, 662–64 (2005)).  "Rather, to relate back, the original and amended pleadings must "'state claims that are tied to a common core of operative facts."  Id. at 940–41 (quoting Mayle, 545 U.S. at 664).

Valencia's new claim does not relate back to his original § 2255 Motion.  In his original Motion, Valencia set forth various assertions of ineffective assistance of counsel by his appointed attorney.  Doc. 1.  While it is true Valencia originally claimed Mr. Harrison was ineffective for failing to file an appeal to challenge the firearms enhancement, the proposed amended claim involves additional and different facts and implicates an entirely different legal framework.  Valencia now claims he told Mr. Harrison to file a notice of appeal on his behalf after sentencing but did not hear back from Mr. Harrison.  This is a different claim than Valencia's original ineffective assistance claims.  Valencia's attempt to amend his § 2255 to set forth another this claim does not relate back and is impermissible.  Thus, the Court **DENIES** Valencia's Motion to Supplement.

Even if the Court were to find Valencia's proposed "supplement" proper, he would still not be entitled to his requested relief.  As noted above, the record before the Court contradicts Valencia's newly asserted claim.  What is more, the Court finds Valencia's claim is conclusory, and the declaration Valencia submits as support for his claim is equally conclusory and specious, at best, given he made this declaration more than a year after he executed his § 2255 Motion. Doc. 1 at 3; Doc. 9-1 at 2.

## III.   Request for Evidentiary Hearing

Valencia maintains he should receive an evidentiary hearing on his claims.  Doc. 11.  In response, the Government states the evidence of record is clear and Valencia is not entitled to an evidentiary hearing.  Doc. 12 at 2.

Section 2255 does not require the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C.

§ 2255(b)).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record."  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted).  Moreover, a movant is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004).  Because Valencia's claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.  Consequently, the Court **DENIES** Valencia's request for an evidentiary hearing.

## IV.    Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Valencia leave to appeal *in forma pauperis*.  Though Valencia has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good

faith if it is "'without arguable merit either in law or fact.'" <u>Moore v. Bargstedt</u>, 203 F. App'x

321, 323 (11th Cir. 2006) (quoting <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001));

<u>see also</u> <u>Brown v. United States</u>, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D.

Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order

in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the

Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant."  A certificate of appealability may issue

only if the applicant makes a substantial showing of a denial of a constitutional right.  The

decision to issue a certificate of appealability requires "an overview of the claims in the habeas

petition and a general assessment of their merits."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336

(2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of

reason could disagree with the district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further."  <u>Id.</u>  "Where a plain procedural bar is present and the district court is correct to invoke it

to dispose of the case, a reasonable jurist could not conclude either that the district court erred in

dismissing the petition or that the petitioner should be allowed to proceed further."  <u>Slack v.</u>

<u>McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Franklin v. Hightower</u>, 215 F.3d 1196, 1199 (11th

Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal

bases adduced in support of the claims."  <u>Miller-El</u>, 537 U.S. at 336.

Based on the above analysis of Valencia's Motion and the Government's Response and

applying the Certificate of Appealability standards set forth above, there are no discernable

issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of

a Certificate of Appealability.  If the Court adopts this recommendation and denies Valencia a

Certificate of Appealability, Valencia is advised he "may not appeal the denial but may seek a

certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a),

Rules Governing Section 2255 Cases in the United States District Courts.  Furthermore, as there

are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus,

the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Valencia's § 2255

Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of

dismissal, and **DENY** Valencia a Certificate of Appealability and *in forma pauperis* status on

appeal.  I **DENY** Valencia's Motion to Supplement and his request for an evidentiary hearing.

Docs. 9.

Any objections to this Report and Recommendation shall be filed within 14 days of

today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate

Judge failed to address a contention raised in the Motion or any other filing must be included.

Failure to file timely, written objections will bar any later challenge or review of the Magistrate

Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro

Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party

waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on

appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R.

3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

      **SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of July, 2021.


BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA